STERLING R. FORT ET AL. v. JOHN R. HOWELL ET AL., BOARD OF ELECTIONS OF BURLINGTON COUNTY.

1. *Mandamus* is not a proper remedy by which a person appointed to a precinct board of registry under section 3 of the Election law of 1895 (*Gen. Stat., p.* 1364) may lawfully call in question the title of an incumbent of the office or oust a *de facto* officer therefrom.

2. *Mandamus* is the proper remedy by which a person nominated by the chairman of the county committee for appointment as member of a precinct board of registry may compel the board of election to appoint him to the office.

On application for *mandamus.*

Argued at November Term, 1895, before Justices GARRISON and LIPPINCOTT.

For the relators, *Samuel A. Atkinson* and *Mark R. Sooy.*

For the defendants, *Joseph H. Gaskill* and *Eckard P. Budd.*

The opinion of the court was delivered by

GARRISON, J.   This is an application for a *mandamus* to be directed to the four persons who constitute the board of election for the county of Burlington, commanding them to appoint each of the nine relators to the board of registry of a specified precinct.   The statutory authority upon which the relators based their right is the statute of 1895.   *Pamph. L., p.* 660, § 3.   The general scheme provided by this act is that in each county there shall be a board of election to consist of four persons, two from each of the main. political parties, to

be selected by the chairman of its state committee, which board shall appoint for each election precinct in the county four persons, two from each of the main political parties, to be selected by the chairman of its county committee, which board shall be a board of registry with certain duties specified by the statute.

It is to this precinct board that the relators demand appointment by the county board as of legal right. Two of the relators, Fort and Loveland, were not appointed by the board at all, while the other seven relators were appointed and afterwards their places were filled by others. As to these seven relators the remedy by *mandamus* appears to be wholly inappropriate. Their appointment was unquestionably legal, and unless they were lawfully deposed the action of the county board by which others were given their places was illegal and did not fill the offices *de jure*. The fact is admitted that some action was taken in the premises which has not been reversed or even directly challenged, and that under the color of such action the persons thereby designated to fill the offices in question entered without notice of any informality or infirmity of title, and have unmolestedly performed their duties as incumbents thereof. It also appears that the seven would-be relators have never tendered themselves at their respective polling precincts or made any demands based upon their supposed right of entry. Under these circumstances what can come of a *mandamus* to the election board to appoint these relators? They were appointed, and whatever rights thereby accrued to them they possess, unless they have been lawfully stripped of them. The case does not fall within the proviso of section 3.

The board has no power to adjudge, at the instance of these relators, that the incumbents, *de facto* officers of its own appointment, are usurpers; and if it had the right to give such a judgment, it has no power of ouster or of enforcing its orders. The title to the office is involved, and nothing short of the judgment of the Supreme Court that the incumbents' title is bad will put them out or put the relators in.

The fact that the action by which the relators were removed from office was under an authority delegated by the board to its chairman and secretary, and hence may turn out to have been a misconception of the law, is still consistent with honesty of purpose, and imparts to the incumbents' title a color of right that will bar the allowance of a *mandamus*. *Rex* v. *Bankes*, 3 *Burr*. 1452; *Rex* v. *Mayor of Cambridge*, 4 *Id*. 2008; *Leeds* v. *Atlantic City*, 23 *Vroom* 332, and cases there cited.

As to these seven relators our opinion is that the rule to show cause must be dismissed.

Fort and Loveland stand in a different position. They were regularly selected by their county chairman and nominated to the county board, who simply refused to appoint them.

That the selection of the members of the precinct boards is primarily with the county chairman and not with the board of election is too clear for discussion, even in the event of a failure on the part of the chairman to fill out his list. No power of appointment vests in the board until notice and opportunity have been afforded the chairman to make a selection, and then the legislative fiat is that "the county board *shall* appoint said nominees." In the case in hand, however, there was no deficiency in the chairman's list; the relators were nominated and their appointment refused upon grounds that seemed sufficient to the board itself.

The question whether the board may refuse to ratify the selection of the county chairman has been drawn into the controversy, but it is not in reality here for decision, for the reason that if such a power exists it is a part of a procedure that was not adopted or pretended to be followed in the present instance. The statute provides that all nominees shall answer in writing, to the satisfaction of the board, all reasonable questions submitted to them by the board as to their efficiency, eligibility and character, and the argument is that as the result of such an examination the board may adjudge the facts against the eligibility of the nominees. Cer-

tain it is, however, that if the board possess such power at all it may exercise it only in the appointed manner, and that unless it does so it cannot escape the duty of appointing the nominees of the chairman of the county committee. Now, in the case in hand no questions were submitted to the nominees and no answers required of them as to their character or fitness; in fine, no proceeding was taken that did or could in the slightest degree relieve the board of the performance of a clear statutory duty. As matters stood there was but one legal course, viz., to appoint the chairman's nominees; nothing that the board did altered that duty; it still remains as their legal duty. Upon this application they will be required to perform it. Let the writ of *mandamus* issue in the cases of Fort and Loveland in accordance with the rule heretofore allowed.